*776 OPINION OF THE COURT
David B. Krogmann, J.
Petitioners bring this CPLR article 78 proceeding seeking to overturn a decision of the Adirondack Park Agency (the APA or Agency) wherein a nonjurisdictional letter (NJ letter) issued by APA administrators by date of February 28, 2006 was rescinded by letter of March 23, 2007. Petitioners sought a declaratory ruling from the Agency, which ruling, affirming the rescission letter, was issued by date of June 25, 2007. Petitioners allege the ruling was made in violation of lawful procedure, was affected by an error of law and was arbitrary, capricious and an abuse of discretion. Respondents defend and raise several point of law objections.
Petitioners are the owners of a parcel in the Town of Bolton comprising 53.7 acres. All but 2.97 acres are considered designated wetlands. There is a history regarding use applications by prior owners to the Agency. Petitioners acquired the parcel for $80,000 in November of 2001.
The subject request proposed the construction of a one-family dwelling with an associated on-site wastewater treatment system, all within the nonwetlands portion of petitioners’ parcel upon which the referenced NJ letter was issued. The rescission letter of March 23, 2007 states in part:
“At the request of staff, the Supervisor of the Agency’s Resource Analysis and Scientific Services Unit reviewed the proposed construction plans (submitted on February 8, 2006) and additional materials related to the property contained in other Agency Files. Staff has concluded that the proposed development has the potential for adverse impact to the wetlands located on the property. Pursuant to § 578.3 (n)(2) of Agency regulations, the proposal constitutes a ‘regulated activity’ and requires an Agency permit as such. The determination of non-jurisdiction in J2006-94 is therefore rescinded.”
The June 25, 2007 APA declaratory ruling letter recounted the above and further included:
“In your request for a declaratory ruling relative to J2007-212, you assert that your clients, in detrimental reliance on the earlier non-jurisdictional determination J2006-94, expended $13,916.50 ‘to design a project that met all the necessary requirements to build a single family residence’. The expenditures *777 involved legal, engineering and Town engineer fees; The expenditures are typical costs associated with site planning and at least some of the engineering cost was incurred prior to issuance of the non-jurisdictional determination.”
The Agency defends it rescission by criticizing petitioners’ survey map in that it only shows a portion of the wetlands and does not relate that the proposed dwelling footprint was on an area of fill. It also relates that the proposed dwelling would be only 19 feet from the edge of the wetland, a proposed septic pump station would be only 13 feet from the edge of the wetland, the septic tank would be only 15 feet from the edge, except that the line to the leach field crosses the wetland along Shallow Beach Road. The plans allegedly do not include comprehensive erosion control measures. The Agency claims that its staff file indicates that the nonjurisdiction determination was made solely on the basis of the leach field being more than 100 feet from the flagged wetland boundary. They claim that under their agreement with the Town of Bolton, the APA retains class A regional project review jurisdiction of type I site plan review projects which includes “any development” occurring within 100 feet of the boundary of a wetland.
The court has reviewed the actions of the Agency in issuing the rescission letter and in issuing its declaratory ruling of June 25, 2007, which review reveals as follows:
When the Agency received petitioners’ letter of February 8, 2006, Agency officials conducted a thorough review of the history of the involved parcel. The earliest Agency history involves an order issued on January 23, 1975 which denied an application by the then owner (Alexander Kovacs) to subdivide and develop the parcel into two residential lots. In May of 1985, the Agency responded to a realtor explaining that the parcel consists “almost entirely” of wetlands having a value of “1” under the Freshwater Wetland Act regulations and that any activity would require an Agency permit. The Agency received a jurisdictional inquiry in November of 1995 to subdivide the parcel into two lots with an on-site wastewater treatment system on each lot. Because the wastewater systems were within the 100-foot “adjacent area” setback to the wetlands, the Agency responded that an Agency permit would be required “due to the involvement and potential adverse [e]ffects to the wetlands on the property.” In June of 1999, the Agency advised an inquirer that an Agency permit would be required and which portion would *778 be the best building site. The Agency issued an April 5, 2000 letter to one of the then owners, Joseph Soffer, relating that an Agency permit would be required for the construction of a single-family dwelling and an on-site wastewater treatment system. On January 9, 2004, a jurisdictional inquiry form was submitted by petitioner Vivian Simonson proposing to build a cabin 50 feet from the wetlands, to which the Agency sent her an application for a minor project permit which was then submitted to the Agency. The Agency responded on February 5, 2004, with a notice of incomplete minor project permit application informing that the wetlands boundary needed to be re-flagged and contain plans for the on-site wastewater treatment system. Mark Rooks, the Agency’s chief biologist at the time re-flagged the wetland boundaries.
The petitioners apparently did not proceed with resubmitting plans for their cabin to the Agency. Instead, some two years later on February 6, 2006, petitioners’ engineer submitted a request for a jurisdictional determination containing a survey map depicting a single-family dwelling and a wastewater treatment plan that proposed an on-site holding tank and a pump station wherein wastewater would be pumped some 1,000 feet to a leach field well away from the wetlands. This request was reviewed by the “jurisdictional office” of the Agency’s legal staff. That office was headed by Nancy Heath, a veteran[1] who asked biologist Mark Rooks to review the survey map. He confirmed that the wetland boundary points A-l through A-12 encompassing the dwelling location were accurately depicted and that the proposed leach field would be 100 feet or more from the wetland boundary. Nancy Heath conferred with Mark Rooks as well as Rita Quinn, the supervisor of the jurisdictional office, all of whom had access to the above history, much of which is noted on Ms. Heath’s notes set out as Agency’s exhibit 17. Ms. Heath states that because the dwelling location was to be outside the wetlands boundary and because the proposed leach field was to be more than 100 feet from the boundary, there “did not appear to be any other basis for asserting Agency jurisdiction,” and the nonjurisdictional determination was issued.
With that assurance in hand, petitioners retained an engineer to devise a storm water management plan as well as attorneys to represent them before the planning board and zoning board *779 of appeals. Board meetings in December of 2006 stirred neighborhood attendance. The Agency’s papers set forth in some detail a series of contacts made by persons inquiring/complaining about the basis for the Agency’s nonjurisdictional letter. Some of the contacts, by letter, e-mail and telephone, were from: Jim Splonskowski, a neighboring landowner; Anthony Crisafulli, a neighboring landowner; a representative of the State Senator’s office; Lynn Garalhoffer, also a neighboring landowner; Kathleen Bozny, the Lake George Association’s land use management coordinator; Meredith McComb, a member of the Town of Bolton Zoning Board of Appeals. These contacts were made to Nancy Heath and Brian Grisi, a local planning assistance specialist. Further, the opponents of this residence garnered the attention of Christopher Navitsky, an engineer who serves as the “Lake George Waterkeeper.” Mr. Navitsky left telephone messages with Daniel M. Spada, the Agency’s supervisor of its Resource Analysis and Scientific Services division. When finally in contact, Mr. Spada immediately recognized the parcel as he had previous involvement in flagging the wetlands. Mr. Navitsky sent Mr. Spada a copy of his March 19, 2007 letter (exhibit 19-6) to the town planning board.
Mr. Spada then engineered the reconsideration of the non-jurisdictional letter.[2] Mr. Spada’s affidavit at paragraph 18 appears to ascribe the reason for the 2006 nonjurisdictional determination (as compared to previous inquiries which asserted jurisdiction) as the leach field being more than 100 feet from the flagged wetland. While conceding the locations for the proposed dwelling, septic tank and pump station are beyond the wetlands, Mr. Spada, an environmental biologist with a steeped resumé, set up six considerations (IT 17), most of which would be obvious at the time of the original nonjurisdictional determination by Ms. Heath, Ms. Quinn and Mr. Rooks.[3] The one consideration that would not have been evident is that the line *780 connecting the leach field, though generally some 15 feet from the edge of the wetland according to Mr. Spada, actually crosses the wetland for a very brief portion. The location of the line actually appears rather innocently along the edge of a lane called Shallow Beach Road, the bed of which appears to be on petitioners’ property. Because the survey submitted with the February 2006 jurisdictional request only delineated the edge of the wetlands adjacent to the dwelling and leach field locations, that the wetlands actually intersect the eastern edge of Shallow Beach Road was not determinable without further inquiry. (The same is based upon an error of fact not directly attributable to petitioners.) That intersection, though minor, does bring the project “within” the wetlands, for which Agency jurisdiction could be maintained. It is the court’s determination that such analysis supplies a rational basis for the rescission of the non-jurisdictional determination of March 23, 2007, and the Agency’s declaration confirming the same on June 25, 2007 (see Matter of Crater Club v Adirondack Park Agency, 86 AD2d 714 [1982], affd 57 NY2d 990 [1982] [regarding rational basis test]), all notwithstanding that community pressure was the clear cause of the reconsideration.
Had the rescission occurred as a result of a closer look given by the Agency within days, or perhaps weeks, of the February 28, 2006 nonjurisdictional letter, the court’s review would end there.
Petitioners claim that, having spent $15,634.97 in the nearly 13 months between the time of the NJ letter and the date of its rescission, there has been “material detrimental reliance” on the nonjurisdictional letter as defined in the Agency’s regulations (9 NYCRR 570.3 [u]). This amount is composed of invoices from D.L. Dickinson, Surveyors and Engineers dated October 23, 2006, for preparation and submission of a major storm water runoff plan and their revision based upon engineers’ comments, $3,750; reimbursement for the Town’s engineering fees dated February 27, 2007, $1,260; from McPhillips, Fitzgerald & Cullum dated March 26, 2007, for legal services rendered from January 10, 2007 to May 22, 2007 relating to the Town of Bolton’s planning board, zoning board and preliminary meetings with engineers and others, $10,624.97.[4]
*781 The APA counters with a long history of the development of the “material detrimental reliance” regulation, the reasons for its existence and the change in its content over the years. It provides history of its application of the rule to prior project applications. Notably the Agency claims in the affidavit of John Banta, counsel, that to avail oneself of this provision, the landowner must demonstrate as a matter of fact: (i) substantial development was already undertaken, or substantial expenditures were already incurred; (ii) those actions were taken in clear reliance on a wrong determination; and (iii) the benefit of such development or expenditures would be irretrievably lost if the determination were reversed. To be sure, item (iii) above is now replaced by “would experience a substantial adverse economic effect if the jurisdictional determination were reversed.” (9 NYCRR 570.3 [u].) This case is apparently the first under consideration of the new “definition,” as above.
The Agency claims the $13,916.50 set forth in the petitioners’ letter is not “substantial” because:
• there has been no construction in furtherance of the project;
• other approvals still must be obtained;
• the amount is not significant compared to the total cost of the project.
The Agency implores the court to consider the prior wording of the above regulation containing the “irretrievably lost” phrase. It then suggests that the expenditure is not irretrievably lost as it would have been necessary to proceed to obtain planning board and zoning board of appeals approvals in any event. Petitioners acknowledge that they were proceeding with the expense of obtaining local approvals. If they had not received the NJ letter they may have simply cancelled their plans and not made any application to either of the local boards or incurred related engineering expenses. It was not as if the project was going forward in any case (as it might have been if the alternative was, for example, a mere reduction in the number of lots of a subdivision). That petitioners might simply have “gone home” and not incurred the recited expenditures is buttressed by the recitation in the Agency’s papers (exhibits 13, 14) that petitioners previously had proposed a one-family residence, but *782 simply withdrew when the APA application was deemed incomplete. Exhibit 13 is an application petitioners made to the Agency on February 2, 2004 seeking a “minor project permit” for a single-family dwelling. Exhibit 14, dated February 5, 2004, is a letter advising petitioners that their application was incomplete. It attached a checklist requesting six attachments, principally a full scale boundary map, a wetlands analysis and mitigation plan and a wastewater treatment system plan prepared by an engineer. The February 5, 2004 letter from the Agency contained the following:
“Most importantly, as is indicated in the permit application and in the form in the Jurisdiction Office that was submitted by the applicant, the applicant is aware that a previous application for a two lot subdivision with two single family dwellings on this same property was previously applied for and was denied. The last paragraph in the denial order for Project No. 75-156 reads: ‘The project would have an undue adverse impact pursuant to Section 809 (10) (e) of the Adirondack Park Agency Act in that construction of any principal building together with accessory uses such as an access road and on-site sewage disposal system in the wetland portion of the project site would (a) substantially and adversely reduce the quality and diversity of wildlife and plant habitats found in said wetland, (b) substantially and adversely reduce the ability of the wetland to filter harmful materials (e.g., nutrients, sediments and toxic materials) from waters entering Lake George from the wetland watershed and (c) substantially and adversely reduce the ability of the wetland to store water and regulate the flow of water into Lake George.’ Unless the new project is significantly different, the Agency will not consider the application.”
Notably, petitioners did not undertake to obtain and submit any of the requested attachments, nor did they follow up the minor project permit application in any way. Instead, some two years later they forwarded their single-family residence proposal with their request for a nonjurisdictional determination of February 6, 2006. It is clear to the court from this sequence of events that petitioners were attempting not to be held to an exhaustive administrative process that even the Agency’s minor project permit application would require. As indicated above, however, the petitioners took steps they had never taken before *783 nor would they have likely taken if there were Agency jurisdictional hurdles still in front of them. The preparation of a storm water management plan as required by the Town of Bolton as well as hiring attorneys to proceed with zoning and planning board applications are expenditures that petitioners “had to incur anyway” only after they were clear of Agency hurdles. Indeed, if the Agency had failed to issue the nonjurisdiction letter, petitioners could have retreated from the same as they did in 2004 rather than proceed with the Agency application procedure.
In view of the 2002 version of 9 NYCRR 570.3 (u) (formerly subd [af]), the court deems the expenditure of $13,916.50 as a “significant sum[ ] of money ... in furtherance of the project, based upon a written formal jurisdictional determination.” Here, petitioners purchased the parcel for $80,000 some 4½ years prior to receiving the subject letter and so the expenditure is some 17.4% of the purchase price. In order to find “material detrimental reliance,” there must also be a finding that petitioners would “experience a substantial adverse economic effect if the jurisdictional determination were reversed.” Respondents urge that exceptions to regulations should be narrowly construed and urge the phrase to be viewed as “irretrievably lost.”[5] An “irretrievably lost” standard would apply in only very limited circumstances (such as the forfeiture of a purchase deposit). The Agency provides examples of its view of the application of the prior regulation. It reviewed a 1991 determination involving expenditures of $46,000 in preparing a subdivision after receiving an erroneous nonjurisdiction letter that the number of lots in the subdivision had not reached a jurisdictional threshold. The Agency found the $46,000 was used to obtain approvals from the town and therefore the expenditure was not lost. The difference, of course, is that those expenditures would have been made in any case to support the subdivision no mat *784 ter how many lots were eventually approved. Here petitioners sought approval for one dwelling on their 53.7 acres.
Respondents have attempted to sway this court’s view of the Agency’s declaratory ruling by reference to the oft-cited seminal case of Matter of Parkview Assoc. v City of New York (71 NY2d 274 [1988]), where the Court of Appeals held that the City could not be estopped from revoking a permit issued in clear violation of its zoning provisions notwithstanding that a building under construction was already several stories higher than the zoning provided. In Parkview, the landowner could not have a vested right in a permit that was illegally issued by an administrator. Here, the NJ letter was properly and legally issued, notwithstanding a later found fact (the lane containing the sewage line’s minor intersection with the wetland boundary). Also cited by respondents are various “change of law” cases wherein a government changed a pertinent law after the fact. Those cases are numerous and the court will resist the temptation to analyze the various levels of hardship and reliance they set forth. Unlike most of the cases cited, which deal with common-law reliance and estoppel situations, the instant analysis involves a regulation, presumably properly enacted, which prescribes the phraseology to be applied to the material detrimental reliance question being presented by petitioners. The specific regulation trumps, then, common-law estoppel analysis. The court, however, does note the opinion in Matter of Padwee v Lustenberger (226 AD2d 897 [1996]). The Court there found that the monies expended by the applicant toward improvements made for his subdivision were the same expenditures he would have had to undertake whether he was limited to a three lot subdivision rather than a five lot subdivision he was eligible for prior to local rezoning. Such contrasts sharply to the instant expenditures which would not have been made in any event and which do not have any present value.
The Agency implores that, as an administrative agency, it is deserving of deference in the interpretation of its regulations. The Agency implores this court to “interpret” prong three of the “material detrimental reliance” test as requiring that an expenditure not qualify unless it has been irretrievably lost, a harsh definition no longer contained in the regulations. As here, the regulation being applied does not require the inherent knowledge and expertise of administrators in order to apply it. (Compare Matter of Campion v New York State Adirondack Park Agency, 188 AD2d 877 [1992] [the Court acknowledged the *785 Agency’s expertise in determining what types of bodies of water are included within the term “river area”]; Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987] [the Court held “where, as here, the judgment of the agency involves factual evaluations in the area of the agency’s expertise and is supported by the record, such judgment must be accorded great weight and judicial deference”].) The more difficult “irretrievably lost” standard is urged by John Banta, the Agency’s counsel, at paragraphs 29 and 40 of his comprehensive answering affirmation and again at paragraph 3 of his supplemental affirmation. At paragraph 26 of his affirmation, Mr. Banta urges that soft cost expenditures are insufficient to constitute detrimental reliance. Those urgings are repeated in the Agency’s memorandum of law.
On a “material detrimental reliance” basis, the court sees no difference between the petitioners proceeding to expend $13,916.50[6] in soft costs and if (presuming they didn’t need planning board or zoning board relief) they went ahead and expended $13,916.50 on site preparation and foundation expenses before receiving the letter of rescission. Neither expenditure would have been undertaken unless they had Agency clearance and neither expense “would have been required in any event.” In both situations, the landowner “would experience a substantial adverse economic effect if the jurisdictional determination were reversed.” The court does not need “help” in “interpreting” the “substantial adverse economic effect” phraseology. It carries plain meaning that does not need Agency expertise in interpreting the same. The urging that soft costs are not eligible for a detrimental reliance analysis and that the expenditures must be irretrievably lost are rejected. The use of such urgings to conclude that petitioners have not shown detrimental reliance does not constitute a rational analysis.
In accordance with the above, it is adjudged as follows:
The court denies the prong of the petition seeking disclosure. The Agency has submitted extensive well-indexed documents and detailed recitations by various involved individuals.
*786 The court denies petitioners’ motion to amend paragraph 23 of the petition. It is abundantly clear that the reason the Agency issued its rescission of the NJ letter after 13 months was because of an ever-escalating series of contacts which caused officials to review every inch of the subject parcel’s history, revealing the very minimal intrusion of the sewage line lying at the edge of a narrow lane which, itself, appears within the wetland boundary. Local pressure alone, while clearly the cause for the file review, is not improper where the circumstances of the rescission are facts not evident on the initial submission.
With regard to the Agency’s objections in point of law, objection I is granted only to the extent of limiting petitioners’ expense claim to $13,916.50 as the amount set forth in the request for ruling and upon which the Agency ruled. Objection II is denied as not being a point of law objection. Objection III is denied as not being a point of law objection and, to the extent that it seeks a protective order, is denied as unnecessary because of the above denial of petitioners’ discovery request.
On the petition, the court finds that the initial rescission of the NJ letter on March 23, 2007 finds minimal rational basis support as discussed above. On the response to the request for a declaratory ruling upon which this petition is based, which request cites the passage of some 13 months and the expenditure of $13,916.50 by petitioners, the court finds that there has been material detrimental reliance by petitioners. The adherence to the rescission of the NJ letter in the June 25, 2007 declaratory ruling is hereby annulled as an error in law and an abuse of discretion as discussed above and the nonjurisdictiona! letter of February 28, 2006 is ordered restored.

. Ms. Heath has been employed in various Agency positions since 1982 and currently holds the position of environmental program specialist.

. Nancy Heath had resisted the earlier recited contacts suggesting that the Agency change its nonjurisdictional finding. Evidence of the same is contained (exhibit 19E) in Jim Splonskowski’s January 23, 2007 letter to Ms. Heath which begins, “It is my understanding after our conversation that your determination stands as written.”

. These factors, which an administrator could have considered and still determined nonjurisdiction, are the relative closeness of the dwelling, septic tank and pump station to the edge of the wetlands, that the line connecting the septic tank to the leach field might somehow “fail” and that the map and plans do not include comprehensive erosion control measures and a storm water runoff plan. It should be noted that the latter two items were considerations being presented to the aforementioned boards.

. The Agency notes that the petitioners’ appeal letter seeking the declaratory ruling cited expenses of $13,916.50 and they did not attach invoices. The court agrees that petitioners cannot expand the record beyond what was avail *781 able to the Agency in making its declaratory ruling. For analysis purposes, the court will use the $13,916.50 figure.

. Respondents urge that “soft costs” such as engineering and attorneys fees should not be considered. The Agency’s June 25, 2007 declaratory ruling declined to give credence to the petitioners’ “soft cost” expenses saying, “The expenditures are typical costs associated with site planning and at least some of the engineering cost was incurred prior to issuance of the non-jurisdictional determination.” The actual invoices show that none of the engineering expenses were incurred prior to the issuance of the NJ letter. The invoices were contained as part of the petition and all show service dates after the NJ letter. It was not merely error, but was arbitrary and capricious for the acting director to ascribe “some of the engineering cost” to have been incurred prior to the NJ letter, especially in view of 9 NYCRR 588.2 (d), which allows Agency staff the authority necessary to determine the petition.

. The court limits the claimed expenditures to the $13,916.50 contained in petitioners’ April 19, 2007 letter requesting a declaratory ruling. Pursuant to 9 NYCRR 588.2 (e), respondents could have refused to issue a declaratory ruling if information before it was insufficient. Having not asked for a breakdown of that figure or other support, it is presumed the Agency accepted the amount as presented. Indeed, John Banta’s supplemental affirmation of November 8, 2007 at paragraph 5 concedes as much.